534 P.2d 476

**The STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Charles CLIETT, Defendant-Appellant.**

**No. 11570.**

Supreme Court of Idaho.

Feb. 25, 1975.

Rehearing Denied April 18, 1975.

---

3. " * * *

Edgar R. Frachiseur of Bennett & Frachiseur, Twin Falls, for defendant-appellant.

W. Anthony Park, Atty. Gen., Jake W. Peterson, Asst. Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Defendant-appellant Charles Cliett was charged with the grand larceny of 86 pigs. He was tried before a jury, found guilty, and sentenced to prison for a term not to exceed 5 years. Although several witnesses testified at trial, the reporter's transcript on appeal contains only the testimo-

ny of the appellant's ex-wife, who was called as a witness for the prosecution. When the criminal acts were allegedly committed by the appellant, he and Mrs. Cliett were married and residing together, but prior to trial they were divorced.

On appeal, the appellant contends that the trial court erred in (1) allowing his ex-wife to relate privileged marital communications; (2) failing to allow into evidence for the purpose of impeachment an order withholding judgment, which order was entered after Mrs. Cliett had pleaded guilty to a felony; and (3) imposing a 5-year prison sentence instead of placing the defendant on probation.

■ On the issue of privileged marital communications, both sides to this appeal agree that divorce does not terminate the privilege afforded confidential marital communications, although divorce does terminate the incompetency of a husband or wife to testify for or against the other. *See* Hess v. Hess, 41 Idaho 359, 364–365, 239 P. 956 (1925).

When appellant's counsel raised the issue of privileged marital communications at trial, the district court ruled that Mrs. Cliett could not relate matters told to her in confidence by her husband during their marriage. However, the court did allow Mrs. Cliett to relate matters which she had overheard her husband communicate to third parties; defense counsel conceded that such testimony was properly admissible, and on appeal the state submits that the matters testified to by Mrs. Cliett were all of this non-confidential nature. As to verbal communications, the record supports the state's position. But the appellant further contends that acts taken by one spouse in the presence of the other with the reasonable expectation of confidentiality can, just as well as words, constitute confidential maritial communications. And, the appellant submits that "Mrs. Cliett was allowed to testify as to the private acts of her husband, even though no one else observed them." The only testimony alleged

to fall within this category is the following:

"Q. What did Mr. Cliett do with the hogs that he brought to your place, did he ever bring the hogs to your house at the Wooden Shoe?

A. Yes.

Q. And when, approximately what time of the night or day, or when was it?

A. He would go over there at night and bring them and leave them in the pickup, park them in the garage and lock the garage and get up in the morning and take them to the sale."

The record indicates, however, that at trial defense counsel made no objection to this particular examination; hence, its admissibility will not be considered on appeal. State v. Haggard, 94 Idaho 249, 253, 486 P.2d 260 (1971); see State v. Thomas, 94 Idaho 430, 435, 489 P.2d 1310 (1971).

■ Having attempted unsuccessfully to show by examination of Mrs. Cliett that she had been convicted of a felony, defense counsel offered into evidence defendant's exhibit 3, a document entitled "order withholding judgment and order of probation." This document in pertinent part stated:

"WHEREAS, through due process of law, the said defendant [Mrs. Cliett] plead guilty to said crime [of issuing a check without funds in the bank] and requests probation from the said District Court.

"* * * [S]entence is hereby withheld for a period of 18 months * * *.

"And it is further ordered that upon the expiration of the period of suspension of judgment herein fixed, or the earlier termination thereof, and upon written showing by or on behalf of the defendant that [she] has fully complied with the terms of [her] probation, then and in that event, this action shall be dismissed."

The trial court refused to admit the offered exhibit, and the appellant assigns this refusal as error.

Under I.C. § 9–1209[1], dealing with impeachment by an adverse party, "it may be shown by examination of the witness, or the record of the judgment, that he had been convicted of a felony." The appellant contends that one who has pleaded guilty to a felony has been "convicted of a felony," within the meaning of I.C. § 9–1209. We recognize that the appellant's position is not without support. Under a statute identical to I.C. § 9–1209, the California Supreme Court has held that "[f]or impeachment purposes, a plea of guilty is equivalent to proof of conviction." People v. Dail, 22 Cal.2d 642, 140 P.2d 828, 834 (1943); see People v. Williams, 27 Cal.2d 220, 163 P.2d 692, 696–697 (1945); People v. Ward, 134 Cal. 301, 66 P. 372, 374–375 (1901). Similarly, in State v. Tate, 2 Wash.App. 241, 469 P.2d 999, 1002 (1970), the court concluded that:

"[A] prosecution witness may be impeached by a plea of guilty which has not been withdrawn because it is for this purpose equivalent to proof of conviction. A prior plea of guilty to a felony is as material and relevant to the issue of credibility of the witness as would be a plea of guilty or verdict of a jury followed by a judgment and sentence."

On the other hand, a contrary view has been taken in other jurisdictions; for example, in State v. Bouthillier, 4 Or.App. 145, 476 P.2d 209, modified, 4 Or.App. 145, 479 P.2d 512 (1970), the court held inadmissible for impeachment an order entering a guilty verdict, concluding that "we are bound by the particular wording of the Oregon statute, ORS 45.600, which [like

---

1. "9–1209. Impeachment by adverse party. —A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

I.C. § 9–1209] limits the showing to examination of the witness or a 'record of the judgment.'" 476 P.2d at 211. *See also, e. g.,* Fairman v. State, 83 Nev. 287, 429 P.2d 63, 64 (1967); People v. Marendi, 213 N. Y. 600, 107 N.E. 1058 (1915); American Bank v. Felder, 59 Pa.Super. 166 (1915). In short, it is safe to say that there is a split of authority on the permissibility of impeaching a witness by showing a verdict or plea of guilty upon which no judgment has been entered or sentence passed. *See* Annot., 14 A.L.R.3d 1272 (1967). See also, 3A Wigmore, Evidence § 987 (Chadburn Rev., 1970).

Regardless of its wisdom, Idaho's impeachment statute—unchanged since its original enactment as R.S. § 6082 in 1887—conclusively determines that a prior conviction of "a felony" is relevant to the issue of the credibility of a witness.

In State v. Barwick, 94 Idaho 139, 483 P.2d 670 (1971), this court held that where the judgment in a criminal case has been vacated, it is error to admit the record of the judgment for impeachment purposes. In doing so, we stated that "[w]here a judgment has been vacated, it is a nullity and the effect is as if it had never been rendered at all." *Id.* at 143, 483 P.2d at 674. The effect, according to *Barwick* is that there is "no valid conviction" which can be used for impeachment purposes. *Id.* Implicit in the *Barwick* decision is the assumption that where no judgment has ever been entered, there is no valid conviction which can be used for impeachment purposes. Where judgment has been withheld, as authorized by I.C. § 19–2601, judgment has not been entered; and it follows that there is no valid conviction which can be used for impeachment. *See* State v. Barwick, supra.[2]

The conclusion we have reached is buttressed by other Idaho decisions as well. In State v. O'Dell, 71 Idaho 64, 225 P.2d 1020 (1950), this court had to determine whether the defendant had been convicted of a prior felony within the meaning of I.C. § 19–2514 (the persistent violator statute); in that case, this court stated that:

> "'Convicted' as ordinarily used in legal phraseology as indicating a particular phase of a criminal prosecution, includes the establishing of guilt whether by accused's admission in open court by plea of guilty to the charges presented, or by a verdict or finding of a court or jury.
>
> "In a more technical, legal sense, conviction means the final conclusion of the prosecution against the accused, including the judgment and sentence rendered pursuant to a verdict or plea of guilty, and it is frequently used to denote the judgment or sentence. * * * A *person, after plea of guilty or verdict, has been convicted when the court decrees that he is guilty.*
>
> \* \* \* \* \* \*
>
> "Hence, *when the court*, pursuant to plea of guilty or verdict of a jury, *adjudges the defendant guilty* of burglary, he has been convicted of a felony within the meaning of Sec. 19–2514, I.C. (persistent violator statute)." 71 Idaho at 68–69, 225 P.2d at 1022. (emphasis added).

In a subsequent case, Ex parte Medley, 73 Idaho 474, 253 P.2d 794 (1953), this court ruled that a trial court may properly withhold judgment without first adjudicating

---

2. Citing *Barwick*, the appellant states: "Of course, if the conviction were vacated, or the prosecution dismissed, then the conviction should not be introduced for the purpose of impeachment." But the appellant also cites State v. Bock, 80 Idaho 296, 328 P.2d 1065 (1958), in which case a conviction had been vacated and a dismissal entered; there the court stated that:

"The dismissal does not expunge the conviction so far as impeachment is concerned. It had the effect of restoring 'civil rights'. § 19–2604, I.C. But there is no civil right to be immune from impeachment. § 9–1209, I.C." 80 Idaho at 311, 328 P.2d at 1074.

Although State v. Bock was not mentioned in State v. Barwick, the continuing validity of this passage from *Bock* is subject to serious doubt in light of the *Barwick* decision.

the defendant's guilt; in doing so, this court stated that:

> "The statute [I.C. § 19–2601, authorizing the withholding of judgment] does not require that the court must first adjudicate the guilt of defendant. The obvious and commendable objective of the Act which seeks in a proper case to avoid the stigma of a judgment of conviction would be in major part defeated if the contention of petitioner is accepted. *To withhold judgment after a plea of guilty protects the defendant at that time against the stigma of a conviction* which may be forever avoided should the defendant conform to its terms and conditions. This creates, and rightfully so, a hope in the heart of the accused that he may ultimately be released under an order of probation without the stigma of a judgment of conviction. This is an incentive for complete rehabilitation and reform, one of the salutary objectives of the Act." 73 Idaho at 479, 253 P.2d at 796. (emphasis added).

Under *O'Dell* and *Medley,* when the court has withheld judgment and has not adjudged the defendant's guilt, the defendant has not been convicted.

In the instant case, it does not appear that the order withholding judgment was intended to decree Mrs. Cliett's guilt; it merely recites that she had pleaded guilty and requested probation. *Compare* State v. O'Dell, supra with Ex parte Medley, supra. Indeed, an adjudication of guilt would have "in major part defeated" the purpose of withholding judgment. Ex parte Medley, supra at 479, 253 P.2d 794. We conclude that defendant's exhibit 3 did not establish that Mrs. Cliett had been *"convicted of a felony"* (I.C. § 9–1209), and hence the trial court properly refused to admit that exhibit.

■ Finally, the appellant contends that the trial court abused its discretion in sentencing him to a term of up to 5 years, and that the length of the sentence was determined by the nature of the property stolen (i. e., livestock), and therefore the sentence was arbitrary, unreasonable, and violative of equal protection of the laws. The maximum penalty which can be imposed for the crime of grand larceny is imprisonment for 14 years. I.C. § 18–4606. In State v. Trowbridge, 95 Idaho 640, 516 P.2d 362 (1973), we sustained a 5-year sentence for the grand larceny of 4 calves (after outlining in some detail the factors to be considered in determining whether to grant or deny probation); here, as there, we find no abuse of the district court's sentencing discretion. The appellant's equal protection argument is without merit. *See* State v. Webb, 96 Idaho 325, 528 P.2d 669 (1974).

The judgment of conviction is affirmed.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

The appellant petitioned for rehearing following entry of opinion in this case. We have examined his petition, which is hereby denied. However, on remand to the district court following affirmation of the judgment, the district court is authorized to consider modification of the order of commitment to retain statutory 120 day jurisdiction pursuant to I.C. § 19–2601. State v. Ogata, 95 Idaho 309, 508 P.2d 141 (1973).